**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MICHAEL JACKSON and
WESLEY AVILA, Individually and
on Behalf of all Those Similarly Situated,

      Plaintiffs,

v.                                              No. 2:20-cv-486 KRS/GJF

POWERSAT COMMUNICATIONS
(USA) LP and POWERSAT
COMMUNICATIONS (USA) GP LTD.

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court on Defendants' Motions for Summary Judgment as to Plaintiffs Michael Jackson and Wesley Avila, (Docs. 43, 44), both filed December 14, 2020. Plaintiffs filed responses to the Motions for Summary Judgment on December 28, 2020, (Docs. 45, 46), and Defendants filed replies on January 11, 2021, (Docs. 47, 49). Having considered the parties' briefing, the record of the case, and relevant law, the Court grants in part and denies in part the Motions for Summary Judgment for the reasons set forth below.

    **I.**    **BACKGROUND**

Defendants provide remote communications services to oil and gas customers throughout the United States, including in New Mexico. (Doc. 35-1) at 5. Plaintiffs Jackson and Avila assert claims against Defendants on behalf of themselves and others for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, ("FLSA"), and the New Mexico Minimum Wage Act, NMSA 1978 §§ 50-4-19, *et seq.*, ("NMMWA"). (Doc. 35-1) at 1.

Plaintiff Jackson worked for Defendants as a Field Service Technician based out of Midland, Texas, from September 16, 2019 through March 11, 2020. (Doc. 43) at 2. Plaintiff Avila worked for Defendants as a Field Service Technician from April 2019 to April 2020. (Doc. 44) at 2.[1] Plaintiffs allege they and other Field Technicians were non-exempt employees who regularly worked over forty hours per week without overtime compensation, in violation of the FLSA and NMMWA. (Doc. 35-1) at 3-8. Plaintiffs define the putative class members as:

> All Field Technicians employed by [Defendants], anywhere in the United States, at any time from May 20, 2017 through the final disposition of this matter who received a salary and/or a day-rate and no overtime compensation.

*Id.* at 3.

In their summary judgment motions, Defendants argue neither Plaintiff Jackson nor Plaintiff Avila worked more than forty hours in any workweeks. (Docs. 43, 44). Since Plaintiffs Jackson and Avila have no viable claims for unpaid overtime under the FLSA or NMMWA, Defendants seek summary judgment as to all of Plaintiffs' claims. (Doc. 43) at 7-8; (Doc. 44) at 7. In response, Plaintiffs assert that Defendants did not properly record or capture Plaintiffs' work. Specifically, Plaintiffs argue that Defendants' reliance on job tickets to track their work hours does not accurately account for Plaintiffs' total hours, and that Defendants failed to include travel time and other time Plaintiffs were performing required work tasks. (Docs. 45, 46). In reply, Defendants maintain that any time Plaintiffs worked more than forty hours was not

---

[1] Defendants state Plaintiff Avila was based out of Odessa/Midland, Texas, but Plaintiff Avila states he was based out of Andrews, Texas. *Compare* (Doc. 44) at 2, *with* (Doc. 45) at 2 and (Doc. 45-1).

compensable because it was either time spent commuting to or from work or when Plaintiffs were off duty. (Docs. 47, 49).

## II. LEGAL STANDARD

### A. Summary Judgment

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial and may not rest on mere allegations or denials in his or her own pleadings. A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248). When applying this standard, the Court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Plaintiffs' FLSA Claims

Defendants ask the Court to grant summary judgment on Plaintiffs' FLSA claims because their job tickets do not demonstrate that they worked more than forty hours in most workweeks, and because in all remaining workweeks any hours in excess of forty included non-compensable, personal time. (Docs. 43, 44). Defendants explain that their Field Service Technicians create

and submit job tickets that detail customer names, rig names, well information, equipment used, tasks completed, and arrival and departure times. (Docs. 43, 44) at 2; (Doc. 43-1) at 2 (Affidavit of Eric Snead, Operations Manager at Powersat Communications); (Doc. 44-1) at 2 (Affidavit of Jose Olivas, Dispatch Manager and Senior Field Operations Manager at Powersat Communications). Defendants claim these job tickets enable them to see what time the technicians started the first job of the day, the time they departed from the last job of the day, and the amount of time between various jobs. Defendants state the job tickets demonstrate that in most weeks, Plaintiffs did not work more than forty hours. Defendants further argue that during those weeks where Plaintiffs' job ticket hours exceeded forty hours, there were large breaks when they were relieved from duty and free to use the time for their own purposes. (Doc. 43) at 6; (Doc. 44) at 5-6.[2]

    The FLSA requires overtime pay of one and a half times an employee's hourly wage for every hour worked over forty hours in a week. 29 U.S.C. § 207(a)(1). To prove a claim for violation of the FLSA's overtime pay requirements, Plaintiffs must allege: (1) that Defendants are "employers" as defined by the Act; (2) that Plaintiffs are "employees" as defined by the Act; (3) that Defendants employed Plaintiffs' services; (4) for more than forty hours in a single work week; and (5) that Plaintiffs did not receive compensation at a rate of 1.5 times the normal hourly

---

[2] Plaintiffs object to the exhibits attached to Defendants' Motions to Dismiss on the basis they exceed the page limits allowed by Local Rule 10.5 and because Defendants did not properly cite to the exhibits. (Doc. 45) at 4-5; (Doc. 46) at 5-6. Plaintiffs asks the Court to strike the exhibits. While Plaintiffs are correct the exhibits exceed the page limits allowed by Local Rule 10.5, the Court declines to strike the exhibits. Defendants properly cited to Mr. Snead's and Mr. Olivas' Affidavits, and, as Defendants explain, the remaining pages comprise job tickets that were submitted to support the factual bases for the affidavits and are adequately summarized in Defendants' briefing.

rate for the hours they worked over forty in that week.  29 U.S.C. § 207(a)(1); *Figueroa v. District of Columbia Metropolitan Police Dept.*, 633 F.3d 1129, 1134-35 (D.C. Cir. 2011) ("[A]n employee has carried out his burden [in an FLSA action] if he proves that he has in fact performed work for which he was improperly compensated.") (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  Under the FLSA, an aggrieved employee can bring a claim against an employer on behalf of himself "and other employees similarly situated."  29 U.S.C. § 216(b).

The FLSA does not specifically define "work," so courts must determine on a case-by-case basis whether an employee's activities are compensable under the FLSA.  *See Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) (citations omitted); 29 C.F.R. § 785.6.  The Tenth Circuit has interpreted the meaning of "work" to be "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1536 (10th Cir. 1991) (citation omitted).  The Department of Labor has adopted the "continuous workday" rule, which means that the "workday" is generally defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities."  29 C.F.R. § 790.6(b); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005).  The term "principal activity or activities" embraces all activities which are "an integral and indispensable part of the principal activities."  *IBP, Inc.*, 546 U.S. at 21.  An activity is integral and indispensable if it is an "intrinsic element" of the employee's principal activities, and one with which the employee cannot dispense if he or she is to perform his or her principal

activities. *Integrity Staffing Solutions, Inc. v. Busk*, 135 S.Ct. 513, 514 (2014); *Baker v. Barnard Const. Co.*, 146 F.3d 1214, 1216 (10th Cir. 1998).

Here, Plaintiffs dispute Defendants' assertion that all of their compensable work hours were captured by their job tickets. Plaintiffs submitted affidavits in which they aver that job tickets were not prepared for all jobs they completed for Defendants, such as non-billable service calls, rig checks, assisting other technicians, and driving between rig sites during the workday. (Docs. 45-1, 46-1). Plaintiffs submitted copies of WhatsApp messages and GPS data supporting their assertions. (Docs. 45-2, 45-3, 46-2, 46-3). In addition to job tickets, Plaintiffs state their work hours were recorded in Defendants' Google calendar, a WhatsApp Message Thread, and Trello, which is Defendants' project database. (Docs. 45-1, 46-1). Plaintiffs explain that job tickets were only created when the services provided would be invoiced to Defendants' clients, but job tickets were not created for calls requiring assistance or repairs to equipment. *See, e.g.,* (Doc. 45-1) at ¶12 (Plaintiff Avila's affidavit) ("On average, I was sent out on one (1) to two (2) service calls per day. The travel time to the job site for these calls ranged anywhere from thirty (30) minutes to four (4) hours. A service call did not require a job ticket because we performed it at no additional expense to Powersat's clients."); (Doc. 46-1) at ¶12 (Plaintiff Jackson's affidavit) (same). Plaintiffs further state they were required to call into weekly crew meeting conference calls while driving to job sites, and they often assisted other technicians after finishing their last tasks for the day. (Doc. 45-1) at ¶¶ 7, 18; (Doc. 46-1) at ¶¶8, 14.

Regarding the periods of time between job sites, Plaintiffs state they spent significant amounts of that time travelling between rig locations or were directed to perform checks on nearby rigs upon completion of assigned jobs. (Doc. 45-1) at ¶¶ 11, 15-16; (Doc. 46-1) at ¶¶14-

16.  For example, Plaintiff Jackson states that on December 2, 2019 he had a 1 hour and 30-minute break between two of his jobs, but he had to travel 92.7 miles to get from the first job to the second.  (Doc. 46) at 11; (Doc. 46-4).  Similarly, Plaintiff Avila cites to WhatsApp records from June 5, 2019, showing he went to pick up equipment before heading to a job site.  (Doc. 45) at 11.  On other days, Plaintiffs explain they were required to stay on site after a job ticket was completed during a rig move to be available to Defendants' clients.  (Docs. 45-1, 46-1) at ¶ 17.

The Court finds Plaintiffs have demonstrated that genuine issues of material fact exist regarding whether they worked more than forty hours in a workweek.  While Defendants argue the driving time between job sites included time for personal errands, Defendants do not rebut Plaintiffs' assertions that this time was spent on service calls, rig checks, and assisting other technicians, and thus was compensable time not captured by the job tickets.  *See* (Doc. 46-1) at ¶¶10, 12, 15 ("[T]here were also occasions where I would drive for four (4) hours between rigs in the course of my daily job duties."  "Not a typical day would pass that I did not receive at least one service call."  "Typically, once I had finished my assigned jobs and service calls, I would go help other Field Technicians complete their jobs and/or service calls."  "In the rare instances where I did have downtime between my last completed job, and my next scheduled job, we were instructed to perform busy work on behalf of Powersat.").

Defendants dispute that time spent driving to job sites was compensable because, under the Portal-to-Portal Act, employers are not required to compensate employees for time spent commuting unless they were required to engage in a "principal activity" prior to their commute.  (Docs. 47, 49) at 4 (citing *Smith*, 462 F.3d at 1289).  The FLSA was amended by the Portal-to-Portal Act to exclude normal home to work travel from the scope of paid time under the FLSA,

as well for any activities that are merely "preliminary or postliminary" to employees' principal activities at work.  29 U.S.C. § 254(a); 29 C.F.R. § 785.35.  The Portal-to-Portal Act's amendment, however, did not change earlier descriptions of the term "work."  In *Steiner v. Mitchell*, 350 U.S. 247, 254 (1956), the Supreme Court explained that Congress passed the Portal-to-Portal Act still intending for an employee's activities to fall within the protection of the FLSA "if they are an integral part of and are essential to the principal activities of the employees."  In *IBP, Inc.*, the Supreme Court further clarified that time spent after the beginning of the first principal activity is not affected by the Portal-to-Portal Act and is therefore compensable.  546 U.S. at 28.  Under the FLSA, then, even after passage of the Portal-to-Portal Act, a "workday" begins after the beginning of the first principal activity, and activities after that point are compensable.  *See id.* at 37 (explaining if an activity is found to be compensable, that activity would trigger the continuous workday).

  Accordingly, Defendants are correct that time spent commuting to and from Plaintiffs' first and last principal activities of the day is not compensable.  *See Smith*, 462 F.3d at 1289 (explaining employers "are not required to compensate employees for time spent commuting between home and their workplace, or for any activities that are 'preliminary to or postliminary to' their principal activities").  However, Plaintiffs have presented evidence that, outside of the time captured by job tickets, they participated in crew meetings while driving to job sites, picked up equipment before driving to a job site, and assisted other technicians after finishing their last tasks for the day.

  As explained by the Tenth Circuit, if an employee's first principal activity occurred before traveling to a job site, then the employee's travel time constitutes compensable work;

however, if the activity "takes all of a few seconds and requires little or no concentration," then the activity is "properly considered not work at all." *Smith*, 462 F.3d at 1289. In addition, if an activity is "tied to the productive work that the employee is employed to perform," the activity should be considered integral and indispensable. *Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 36 (2014); *see also IBP, Inc.*, 546 U.S. at 40 (explaining mandatory pre-shift briefings may be integral and indispensable to an employee's principal activities). Since Plaintiffs have demonstrated there is a factual dispute regarding when Plaintiffs engaged in "principal activities" for Defendants, the Court will deny summary judgment. *See Baker v. Barnard Const. Co.*, 146 F.3d 1214, 1216 (10th Cir. 1998) (explaining that determining the precise nature of an employee's duties as preliminary or postliminary to principal activities for purposes of the Portal-to-Portal Act is a question of fact); *Burbach v. City of Albuquerque*, 893 F.Supp.2d 1216 (D.N.M. 2012) (factual issues existed as to whether city "employed" security guards for five-minute period prior to start of their shifts, summary judgment denied as to whether that time was compensable "work" within meaning of FLSA); *Carter v. Panama Canal Co.*, 314 F.Supp. 386, 391 (D.C.D.C. 1970) (whether the activities were such an integral and indispensable part of the employee's principal activity as to be compensable is a question of fact); *Dunning v. Q. O. Ordinance Corp.*, 233 F.2d 902, 903 (8th Cir. 1956) (question of whether activities of powder line workers in changing clothes and showering before and after work were integral and indispensable parts of principal activities was question of fact).

      Defendants also contend that Plaintiffs failed to show that Defendants knew or should have known that they were working more than forty hours a week and failed to explain how Defendants should have calculated their time outside of what is reported on job tickets. *Id.* at 9-

10. To the contrary, both Plaintiffs' affidavits include statements that they were "directed to" or "required to" engage in service calls and rig checks for which no job ticket was generated, stay on site during rig moves, and assist other technicians when finished with a job ticket. *See* (Docs. 45-1, 46-1). Plaintiffs further provide evidence from WhatsApp messages, GPS data, and Google calendar entries, showing they worked hours that were not recorded on job tickets and which Defendants could have used to calculate their hours. Moreover, even by relying solely on job tickets, Defendants acknowledge that Plaintiff Jackson worked in excess of forty hours in seven workweeks which would have alerted Defendants to an overtime issue. *See* (Doc. 43) at 6.

Finally, Defendants argue they should be granted summary judgment for the weeks in which Plaintiffs do not dispute that they worked fewer than forty hours. (Docs. 47, 49) at 3. Plaintiff Jackson states that he worked more than forty hours in at least eighteen weeks, and Plaintiff Avila states he worked more than forty hours in at least twenty-seven weeks. (Doc. 45) at 4, 8, 12; (Doc. 46) at 12; (Doc. 45-1) at ¶ 23. Plaintiffs state that upon additional discovery they may be able to show they worked additional weeks of overtime. Nevertheless, Defendants ask the Court to grant summary judgment in those weeks Plaintiffs do not dispute they worked fewer than forty hours. Since there is no cause of action under the FLSA "when there is no evidence of a minimum wage or maximum hour violation by the employer," the Court will grant summary judgment for Defendants as to each week in which the parties do not dispute that Plaintiffs worked fewer than forty hours. *Monahan v. Cnty. Of Chesterfield, Va.*, 95 F.3d 1263, 1280 (10th Cir. 1996).

## B. Plaintiffs' NMMWA Claims

Defendants move for summary judgment on Plaintiffs' NMMWA claims for the same reasons asserted for Plaintiffs' FLSA claims and additionally because Defendants contend the NMMWA only applies to work conducted in New Mexico. (Doc. 43) at 7; (Doc. 44) at 6. Defendants rely on two cases for this assertion: *Rodriguez v. Peak Pressure Control, LLC*, 2020 WL 3000414 (D.N.M.), and *Jimenez v. Packers Plus Energy Svcs. (USA) Inc.*, 2016 WL 7670352 (D.N.M.). Because Plaintiffs do not allege they worked in New Mexico for more than forty hours in a workweek, Defendants argue they are entitled to summary judgment on Plaintiffs' NMMWA claims.

Similar to the FLSA, the NMMWA requires employers to pay overtime compensation to their non-exempt employees who work more than forty hours in a workweek. N.M.S.A. 1978, § 50-4-22(D) ("[A]n employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours."). Defendants are correct that other decisions in this court have reasoned that the NMMWA applies to work that is done in New Mexico. *See Rodriguez*, 2020 WL 3000414, at *3 (stating the NMMWA "appears to be concerned with whether the employment is done in New Mexico"); *Jimenez*, 2016 WL 7670352, at *5 (explaining the NMMWA applies to the plaintiff's work conducted in New Mexico). Indeed, in *Rodriguez*, the court reasoned that the named plaintiff was covered by the NMMWA, even though his employer was based in Texas, because the plaintiff resided in New Mexico and worked more than forty hours a week in New Mexico. 2020 WL 3000414, at *2-3. In making that determination, the court distinguished other cases that established that a state's labor laws do

not reach work done by non-residents mainly or entirely outside of that state. *Id.* at *3 (citing *Panos v. Timco Engine Ctr., Inc.,* 197 N.C. App. 510, 515 (2009); *Fontenberry v. MV Transp., Inc.,* 984 F. Supp. 2d 1062, 1066 (E.D. Cal. 2013); *Dow v. Casale,* 83 Mass. App. Ct. 751, 756-58 (2013)).

In their response briefs, Plaintiffs argue that summary judgment is not appropriate for their NMMWA claims because they "worked overtime during weeks where [they] performed work for Defendants in New Mexico." (Doc. 45) at 6 n.5; (Doc. 46) at 7 n.6. Plaintiffs do not assert that they ever worked more than forty hours a week in New Mexico, and they do not cite to any authority in support of their argument. Because Plaintiffs do not allege they worked in excess of forty hours in New Mexico, they are not residents of New Mexico, and they conducted the majority of their work outside of New Mexico, the Court will grant Defendants' Motions for Summary Judgment as to Plaintiffs' NMMWA claims.

### IV.  CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Defendants' Motions for Summary Judgment, (Docs. 43, 44). The Court grants the Motions for Summary Judgment for weeks in which the parties do not dispute that Plaintiffs worked fewer than forty hours and for Plaintiffs' NMMWA claims. The Court denies the Motions for Summary Judgment as to Plaintiffs' remaining claims. Plaintiffs may refile their Motion for Conditional Certification within thirty (30) days of entry of this Memorandum Opinion and Order.

**IT IS THEREFORE ORDERED** that Defendants' Motions for Summary Judgment, (Docs. 43, 44), are GRANTED in part and DENIED in part for the reasons set forth above.

**IT IS FURTHER ORDERED** that Plaintiffs may file a Motion for Conditional Certification within thirty (30) days of entry of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent