UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
LAS CRUCES DIVISION

| | | |
|---|---|---|
| MICHAEL JACKSON and <br> WESLEY AVILA, Individually and on <br> Behalf of All Those Similarly Situated, | § § § § | |
| *Plaintiffs*, | § | NO. 2:20-cv-00486-KRS- GJF |
| V. | § § § | COLLECTIVE ACTION FILED UNDER <br> 29 U.S.C. 216(b) |
| POWERSAT COMMUNICATIONS <br> (USA) LP AND POWERSAT <br> COMMUNICATIONS (USA) GP LTD, | § § § § § § | |
| *Defendants*. | § | |

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT**

Plaintiffs, Michael Jackson ("Jackson") and Wesley Avila ("Avila") (collectively "Named Plaintiffs"), individually and on behalf of all current Opt-In Plaintiffs, submit this unopposed motion to request approval of the settlement and seek dismissal of Plaintiffs' claims against Defendants Powersat Communications (USA) LP and Powersat Communications (USA) GP Ltd. (collectively "Defendants") (together with the Named Plaintiffs, the "Parties"). Accordingly, Plaintiffs respectfully request the Court grant this motion and approve the requested attorneys' fees and costs.

### I.    INTRODUCTION

The Parties seek Court approval of the Settlement Agreement and Release of Claims ("Agreement").[1]  After extensive arms-length negotiations, the Parties reached an agreed resolution of the pending action. The Agreement provides meaningful compensation for the Collective Members based on a damage model created by Collective Counsel. If the Settlement is approved, the Named

---

[1] Attached hereto as Exhibit 1.

1

Plaintiffs and all Opt-In Plaintiffs (collectively, the "Collective") will receive a letter that explains the nature, terms, and scope of the settlement, and a check with their individual Settlement Share. Plaintiffs' proposed letter notice is attached as hereto as Exhibit 2. The Parties agree that, upon Court approval of this Motion, this lawsuit will be dismissed with prejudice.

## II.     BACKGROUND

Plaintiff Jackson filed this case on May 20, 2020, as a collective action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 and a class action under the New Mexico Minimum Wage Act ("NMMWA"), §§ 50-4-19 *et seq.*, on behalf of himself and other similarly situated field technicians. *See* ECF No. 1. Through his Original Complaint, Plaintiff Jackson alleged he, and other similarly situated field technicians, were not paid overtime, in violation of the FLSA and the New Mexico Minimum Wage Act and sought unpaid overtime wages, liquidated damages and attorneys' fees and costs. *Id.* Defendants denied the allegations and raised several affirmative defenses. *See* ECF No. 37.

Plaintiff Jackson filed his opposed motion for conditional certification of a collective action on July 9, 2020. *See* ECF No. 12. Defendants also moved for summary judgment on July 10, 2020 (ECF No. 13), and Plaintiff Jackson moved to continue the deadline to respond to the dispositive motion until after conducting discovery on the merits. *See* ECF No. 17. On September 28, 2020, Plaintiffs filed their First Amended Complaint adding Wesley Avila as a second named Plaintiff. *See* ECF No. 35-1. Thereafter, the Court granted Plaintiff's motion to continue the deadline to respond to Defendants' dispositive motion in part allowing Plaintiffs to conduct limited discovery regarding the named Plaintiffs, and denied Plaintiff's Motion for Conditional Certification without prejudice with leave to refile after Defendants' Motion for Summary Judgment. *See* ECF No. 39.

After conducting limited discovery, Defendants moved for summary judgment against both named Plaintiffs. *See* ECF Nos. 43-44. The Court issued its ruling on March 17, 2021, granting in part

2

and denying in part Defendants' motions for summary judgment. *See* ECF No. 51. Thereafter, Plaintiffs filed their opposed amended motion for conditional certification of a collective action on April 13, 2021. *See* ECF No. 52. On July 14, 2021, the Court granted Plaintiffs' Opposed Motion for Conditional Certification and Notice to the Putative Collective Members, and ordered that notice be sent to "All Field Technicians employed by Powersat Communications (USA) LP and/or Powersat Communications (USA) GP LTD, anywhere in the United States, at any time from May 20, 2017, through the final disposition of this matter who received a salary and/or a day rate and no overtime compensation." As of the close of the opt-in period on November 2, 2021, twelve (12)[2] current and former field technicians opted-in to the litigation. The investigation and litigation against Defendants have been ongoing for over two years. The Parties participated in formal discovery for all Opt-In Plaintiffs, as well as exchanged information related to potential damages and liability issues, and eventually agreed on the terms which are memorialized in the Settlement Agreement before this Court for approval.

### III.      KEY TERMS OF SETTLEMENT

If approved by the Court, the Settlement will include Named Plaintiffs, Michael Jackson and Wesley Avila, and the Opt-In Plaintiffs (collectively, the "Collective"). The Settlement Agreement obligates Defendants to pay a maximum settlement amount of $80,000.00 to settle Plaintiffs' claims. As set forth in the Agreement, the Gross Settlement Amount covers all wage and hour claims covered by the Agreement as well as attorneys' fees and costs. The Gross Settlement Amount excludes the employer's share of payroll taxes and Defendants will be responsible for any additional payroll tax liability.

---

[2] The withdrawals of Opt-In Plaintiffs Edward Flores and Justin Oliver's Consent forms have been filed with this Court (ECF No. 106), effectively brining the total number of Collective Members to ten (10) current and former field technicians that were employed by Defendants and have opted-in to the litigation.

The Net Settlement Amount constitutes the amount remaining after deducting the proposed service awards to Named Plaintiffs as well as attorneys' fees and costs from the Gross Settlement Amount. The Net Settlement Amount represents the amounts that will be used to pay the Collective Members their individual Settlement Share. Each Collective Members' proportional share of the Net Settlement Amount is based on Collective Counsel's calculations of their actual damages from Defendants' records. *See* Exhibit 1 at ¶ III.C; Exhibit D.

The potential amount that each Collective Members will receive, is attached as Exhibit D to the Agreement. By signing the Agreement, Named Plaintiffs will release Defendants from the following claims:

> ii. **Named Plaintiffs Jackson and Avila.** As of the date the Judgment becomes Final, Named Plaintiffs Jackson and Avila hereby fully and finally release Defendants and the other Released Parties from any and all claims, losses, debts, charges, damages, demands, obligations, causes of action, lawsuits, liabilities, breaches of duty, misfeasance, malfeasance, promises, controversies, contracts, judgments, awards, penalties, costs, and expenses of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, for violation of any local, state, or federal statute, rule, regulation, ordinance or common law, including but not limited to those claims raised in the Action and/or that could have been raised in the Action, and those arising from or related to his or her work with Defendants that occurred during the Collective Period ("Named Plaintiffs' Released Claims"). This release excludes only the release of claims not permitted by law. Additionally, Named Plaintiffs Jackson and Avila will sign a standalone *Waiver and General Release* in the forms attached hereto as Exhibits C-1 and C-2 contemporaneously with their execution of this *Settlement Agreement and Release*.

*See* Exhibit 1, III.F.ii.

The Collective Members will be subject to a more limited release, and will release only their wage and hour claims, as follows:

> i. **Collective Member Release.** Each Collective Member agrees to release all claims, rights, demands, liabilities and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaint in the Action, including under the Fair Labor Standards Act ("FLSA"), the New Mexico Minimum Wage Act ("NMMWA"), and under the theories of *quantum meruit,* unjust enrichment, conversion, breach of contract, theft of labor, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, along with all claims for costs, attorneys' fees, expenses, liquidated damages, interest, or any other claims or benefits against the Released Parties.

*Id.* at III.F.i.

## IV. THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT

Plaintiffs seek the Court's approval of the Agreement attached as Exhibit 1. Courts in the Tenth Circuit have held that FLSA claims asserted in a private action may only be compromised after the district court reviews and approves the terms of the settlement. *Morton v. Transcend Servs., Inc.*, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "Settlements may be permissible in the context of a suit brought by employees because initiation of the action . . . provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F.2d at 1354. "The employees are likely to be represented by an attorney who can protect their rights under the statute." *Id.* Under these circumstances, the court should approve a settlement that represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1354-55.

This Court has previously adopted the same analysis. *See Rodarte v. Board of County Com'rs of Bernalillo Cnty.*, No. 14-CV-193 JAP/SCY, 2015 WL 5090531, at *7 (D.N.M. Aug. 28, 2015) ("[T]he Court will subsume its discussion of those factors to the more general concerns identified by the Baker court as dispositive to *Lynn's Food*."). However, "an extensive review of every FLSA settlement has never been required by the Tenth Circuit" nor by this District. *See, e.g., Acevedo v. Southwest Airlines Co.*, 2019 WL 6712298, at *6-7 (D.N.M. Dec. 10, 2019) (citing *Arnold v. Navika Capital Grp., LLC*, No. 14-

5

CV-378-GKF-FHM, 2016 WL 8198319, at *1 (N.D. Okla. May 20, 2016) ("[B]ecause the Tenth Circuit has not yet required court approval for FLSA settlements, the movants remain free to enter into the settlement agreements, if they so desire."); *Fails v. Pathway Leasing Ltd. Liab. Co.*, No. 18-cv-00308-CMA-MJW, 2018 WL 6046428, at *4 (D. Colo. Nov. 19, 2018) (holding, in the FLSA context, "the Court is not required to review the merits of the settlement agreement, and the parties may no longer wish for the Court to do so")). As set forth below, the Parties' settlement meets the criteria for approval.

### a. A Bona Fide Dispute Existed Between the Parties.

The Settlement Agreement resolves a bona fide dispute. In the instant case, the Parties contested the claims and defenses asserted. Plaintiffs allege that they, and other similarly situated individuals, were not paid overtime by Defendants which willfully violated the overtime requirements of the FLSA. Defendants denied violating the FLSA and denied acting willfully or in bad faith.

Further, this case was settled after nearly two years of litigation, including extensive motion practice, discovery, and work by the Parties. Collective Counsel performed significant research and investigation regarding Defendants' pay practices, potential liability, financial viability, and whether Defendants acted in good faith (or willfully) in their classification of Plaintiffs. The Parties worked to resolve various disputed issues, such as issues regarding conditional certification, and damage calculations. The Parties conducted significant motion practice. And if the case were not settled, there would be vast work to come, including discovery, associated discovery disputes, depositions, dispositive motions, questions regarding applicability of the FLSA, good faith, willfulness, decertification, pretrial motions, trial, and potential appellate issues. The Parties performed significant work, which prepared both sides to recognize and appreciate the risks of proceeding if this case were not settled.

### b. The Settlement is Fair and Reasonable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). In determining whether a settlement is fair to the parties in a FLSA collective action, this Court looks at whether the settlement reflects the legal and factual disputes "at play when the settlement was reached while compensating FLSA collective action members with a significant portion of the amount Plaintiffs sought at trial." *Rodarte*, 2015 WL 5090531, at *9. Courts assessing an FLSA settlement for fairness and reasonableness examine factors that apply to proposed class action settlements under Rule 23(e), including: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV., 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Id.*

#### i. The Agreement was Fairly and Honestly Negotiated

First, the settlement was fairly and honestly negotiated by counsel experienced with FLSA actions. Defendants produced data for the Collective Members showing hours worked and compensation received. Both Parties created damage calculations based on the pay and time data. The Parties attended a Settlement Conference with the Honorable Gregory J. Fouratt, United States Magistrate Judge, District of New Mexico on June 21, 2022. The negotiations by experienced counsel

7

support that the settlement agreement was fairly and honestly negotiated.

### ii.   The Ultimate Outcome of the Litigation Remains Unknown

Second, serious questions of law and fact exist as to whether Defendants are liable to the Collective Members and, if so, in what amounts. The Parties dispute the hours worked, the classification of the Collective Members, the exemption status of the Collective Members, whether Defendants acted in good faith and thus whether liquidated damages are appropriate, and whether Defendants acted willfully, which would affect whether Collective Members may recover under a two-year or three-year statute of limitations. The proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

### iii.   The Value of the Settlement Is Significant

Third, the immediate recovery offered by the proposed settlement outweighs the potential value of the case if the Parties continued litigating the matter. As mentioned, there are legal and factual uncertainties surrounding liability and damages. If the Parties proceeded to litigate the matter instead of settling, the next steps would require the Parties to engage in lengthy and costly discovery, disputes and motion practice regarding decertification, which would likely be followed by cross-motions for summary judgment and potential trial on liability and damages. Instead of undertaking this protracted litigation course which may result in no recovery, the proposed settlement guarantees the Collective Members will receive a substantial recovery. Indeed, each Collective Member will receive approximately 95.5% of their claimed unpaid back wages pursuant to the terms of the Agreement.

### iv.   The Settlement Is Fair and Reasonable

Collective Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. *See* Declaration of Clif Alexander, attached hereto as Exhibit 3, at ¶¶ 17–18. Based on Collective Counsel's knowledge of the case and the applicable law, as well as their experience

8

in numerous similar wage and hour collective actions, Collective Counsel believe the Settlement is fair and reasonable. Exhibit 3, at ¶ 23. This factor supports approval of the Settlement. *See Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). Additionally, Named Plaintiffs approved the terms of the Settlement. Exhibit 3, at ¶ 23. This supports that the Parties agree the settlement is fair and reasonable.

### v. The Requested Attorneys' Fees are Reasonable

Fifth, the amount of attorneys' fees requested by Collective Counsel herein are fair and reasonable. The FLSA provides that the Court "shall . . . allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Robles v. Brake Masters Sys.,* No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *19, (D.N.M. Jan. 31, 2011); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828 *1 (W.D. Okla. Oct. 23, 2018). Although the fee is mandatory, the Court has discretion to determine the reasonableness of the amount requested. *See Olivo v. Crawford Chevrolet Inc.*, 526 Fed. App'x 852, 855 (10th Cir. 2013). Here, Collective Counsel are seeking to recover $47,570.00 in attorneys' fees and litigation expenses to compensate them for their actual time invested in the case, as addressed in greater detail, *infra.*

### V. THE COURT SHOULD APPROVE THE ATTORNEYS' FEES AND COSTS

The amount of attorneys' fees requested by the Collective Counsel herein are fair and reasonable. The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); *see also Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014). An award of attorneys' fees under the FLSA is mandatory, with the amount of the fees within the discretion of the Court. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434

9

U.S. 412, 415 n.5 (1978) (an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo v. Crawford Chevrolet Inc.*, 526 Fed. Appx. 852, 854 (10th Cir. 2013) ("As prevailing parties on this claim, plaintiffs were entitled to an award of attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same); *Ali v. Jerusalem Restaurant, Inc.*, No. 14-CV-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015) (same). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The starting point in determining the reasonableness of attorneys' fees is the lodestar—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010) (citing *Hensley v. Eckerhart,* 461 U.S. 424 (1983)). The party seeking an award of fees must prove both the number of hours spent and reasonableness of the hourly rates. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000); *Barbosa v. Nat'l Beef Packing Co., LLC*, CIV.A. 12-2311-KHV, 2015 WL 4920292, at *9 (D. Kan. Aug. 18, 2015) ("The fee applicant bears the burden to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."). If this burden is met, a claimant is entitled to the presumption that the lodestar amount reflects a "reasonable" fee. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

Once the Court determines the lodestar, it must then determine whether any upward or downward adjustments should be made to the lodestar "to account for the particularities of the suit and its outcome." *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (citation omitted). In assessing whether adjustments should be made, courts often consider the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, which include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) preclusion of other employment; (5) the customary fee in the

community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and relationship of the professional relationship with the client; and (12) awards in similar cases.

488 F.2d 714, 717–19 (5th Cir. 1974). Although these factors may be considered, the court does not need to consider "the factors [ ] subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n. 9. The lodestar calculation is meant to be the primary consideration when awarding fees rather than the *Johnson* factors. *Anchondo*, 616 F.3d at 1103 (citing *Perdue v. Kenny A ex rel. Winn*, 559 U.S. 542 (2010)).

Collective Counsel negotiated their requested fee amount of $47,570.00 to compensate them for their work on this case. This reflects over 550 hours of time dedicated to the prosecution of this action. *See* Exhibit 3; Declaration of William S. Hommel, Jr., attached hereto as Exhibit 4. Collective Counsel's lodestar in this matter is $239,417.50 in addition to $4,570.00 in reasonable expenses. Detailed information supporting the reasonableness of both the number of hours worked and the rates charged, is contained in the declarations of Clif Alexander and William S. Hommel, Jr. *See id.*

Here, Collective Counsel's requested attorney fees and litigation expenses are imminently reasonable.

### a. FLSA Collective Actions are Inherently Complicated and Collective Counsel is Experienced and Skilled in Handling the Same.

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. Three fundamental questions governed this case: (1) whether Defendants failed to pay overtime to the Collective Members; (2) whether Defendants' failure to pay overtime to Plaintiffs was in good faith; (3) whether Defendants willfully violated the FLSA; and (4) whether these questions could be resolved on a collective action basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

11

Collective Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well-recognized in FLSA cases such as this. FLSA collective action cases such as this are the main focus of Collective Counsel's docket. *See* Exhibit 3, ¶ 4. Although Collective Counsel are based in Texas, Anderson Alexander, PLLC has a national docket of FLSA cases, with litigation across the United States, specifically including unpaid overtime cases such as this one. As such, Collective Counsel is familiar not only with this complex area of the law, but that also with these claims in the oilfield industry, and specifically in this case. *See id.*

Cases brought pursuant to the FLSA involve a specialized area of law where extra skill is needed to successfully litigate them. *See Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479–80 (S.D.N.Y. 2013) ("wage and hour collective and class actions are, by their very nature, complicated and time-consuming"). In addition to the number of potential Collective Members, resolving the procedural issues, the merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972, at *6.

As district courts in the Tenth Circuit have noted, attorneys handling such classes are precluded by the ticking of the clock from taking other cases (factor 4) given that counsel took a chance on a possible recovery in a contingent fee case rather than strictly working on an hourly basis. As set forth below, Collective Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable (factor 10). *See Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *6 (D. Colo. Dec. 18, 2018). Indeed, the possibility existed in this case that no recovery would be made for the time and efforts exerted by Collective Counsel.

    **b.**    **The Time and Labor Required was Substantial and Collective Counsel's Requested Costs are Reasonable (Factors 1 and 7).**

Regarding the time and efforts required of Collective Counsel (factors 1 and 7), this matter has been pending for almost two years. During this time, Collective Counsel drafted a motion for

12

conditional certification, a motion to continue briefing on Defendants' dispositive motion, a motion to stay, various joint motions and status reports. Collective Counsel also reviewed extensive pages of documents and data, maintained open lines of communication with counsel for Defendants, and created a damage model for all Collective Members utilizing multiple data points. In total, Collective Counsel has spent 376 hours litigating this case.

In addition, Collective Counsel seek reasonable unreimbursed costs of $2,670.36. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Collective Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and duplication, postage and other delivery fees, Pacer charges, and legal research. These are the types of costs normally billed to clients. *See Aragon*, 2018 WL 6620724, at *7; *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB- KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). These expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement, Defendants do not object to the request for costs.

      **c.**      **Collective Counsel Represented Plaintiffs on a Contingency Basis (Factors 5, 6, 10, 12).**

Next, the separately-negotiated, agreed contingency fee (factors 5, 6, 10, and 12) in the Professional Services Agreement between Plaintiffs and Collective Counsel provides that Collective Counsel has undertaken Plaintiffs' representation according to a contingency fee arrangement. Pursuant to that agreement, Collective Counsel is only paid if successful. That payment can come through a percentage of the Gross Settlement Amount, if any, or an amount agreed to by the Defendants and award by the Court. Collective Counsel has bourn 100% of the risk of loss and has been responsible for the advancement of all costs, which if not recovered, would be lost. Collective Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery.

*Id.*

Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Aragon*, 2018 WL 6620724 at *6; *Shaw,* 2015 WL 1867861, at *4. The "process of reviewing and approving stipulated attorneys' fees in the event of a settlement [of an FLSA case] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA "attorneys' fees included in a settlement agreement requires … deference by the district court to the parties' agreement." *Id.*

### d. Collective Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12).

Collective Counsel's request for attorneys' fees of $43,000 is within the customary range when considering the applicable lodestar for the work performed in this matter, particularly when the work was performed on a contingent basis.

The contingent nature of Anderson Alexander, PLLC's representation also factors into the undesirability of the case (factor 10). Collective Counsel took this case on a contingency basis during a lull in the oil and gas industry. This slowed down the FLSA collective action process and created additional research and expenses. It could also increase both Parties' expenses in this matter if the Settlement Agreement is not approved. Lastly, this is a case involves exemption defenses and economic reality factors, which make litigation highly fact intensive.

### e. Degree of Success Obtained is High (Factor 8).

Finally, "the most critical factor in determining a fee award is the degree of success obtained." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). The degree of success here is high because Defendants vigorously contested Plaintiffs' claims and denied that Plaintiffs and the Collective

Members were improperly paid, underpaid, or that any alleged damages were owed. The Settlement represents a significant recovery for Plaintiff and the Collective Members and provides a recovery that constitutes 95.5% of their unpaid back wages. This is especially true considering the disputed issues in the case: (1) whether Defendants' failed to pay overtime to Plaintiffs; (2) whether Defendants' failure to pay overtime to Plaintiffs was in good faith; (3) whether Defendants willfully violated the FLSA; and (4) whether Plaintiffs and the Opt-In Plaintiffs were similarly situated for trial purposes.

For these reasons, Plaintiff believes the requested fee amount reasonable and necessary in this case. Collective Counsel also seeks reimbursement of their advanced litigation expenses.

### VI.    CONCLUSION

For all the reasons set forth herein, the Plaintiff respectfully requests his Unopposed Motion for Settlement Approval be granted in full.

Date: August 4, 2022								Respectfully submitted,

/s/ *William S. Hommel, Jr.*
**William S. Hommel, Jr.**
State Bar No. 09934250
**HOMMEL LAW FIRM**
5620 Old Bullard Road Ste. 115
Tyler, Texas 75703
903-596-7100
469-533-1618 Facsimile
bhommel@hommelfirm.com

By: /s/ *Clif Alexander*
**Clif Alexander** *(Admitted Pro Hac Vice)*
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** *(Admitted Pro Hac Vice)*
Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren E. Braddy**
Texas Bar No. 24071993
lauren@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys for Named Plaintiffs and the Opt-In Plaintiffs***

**CERTIFICATE OF CONFERENCE**

I hereby certify that I have conferred with Defendants' counsel of record and Defendants are not opposed to the filing of this motion or the relief requested herein.

/s/ *Clif Alexander*
Clif Alexander

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2022, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the District of New Mexico, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Clif Alexander*
Clif Alexander